No. 12,898.

In re Stockham.
Vanocker, Assignee *v.* Jack, Receiver.
(11 P. [2d] 945)

Decided May 16, 1932.

Mr. C. H. Stewart, for plaintiff in error.

Messrs. Moynihan, Hughes & Knous, for defendant in error.

*In Department.*

Mr. Justice Alter delivered the opinion of the court.

A. H. Stockham, for many years president of the First National Bank of Delta, Colorado, made a general as-

signment for the benefit of his creditors, and in his deed appointed an assignee, who filed his written declination, whereupon the district court, on December 30, 1929, appointed R. B. Vanocker as assignee. On September 21, 1929, by order of the Comptroller of Currency, the First National Bank of Delta was closed, and Arch R. Jack was appointed receiver thereof. On October 19, 1917, Walter G. Hillman, as cashier of the First National Bank, gave his certain fidelity bond in the penal sum of twenty thousand dollars, with A. H. Stockham and W. B. Stockham as sureties, which said bond was conditioned as follows: "* * * The condition of the foregoing obligation is such that whereas the said Walter G. Hillman is the duly elected, qualified and acting cashier of The First National Bank of Delta, Colorado, and as such is entrusted with the books, papers, moneys, funds and property of said First National Bank of Delta, Colorado, and with the conduct of its business as such cashier, now, therefore, should the said Walter G. Hillman account to and pay over to said The First National Bank of Delta, Colorado, all of the moneys, funds and papers and property of said bank and shall not misappropriate or keep to his own use any of the funds, papers, bills, notes, drafts, or other property of said bank, then and in such event this obligation shall be null and void, otherwise to be and remain in full force and effect."

On January 10, 1922, Hillman was elected vice president of the First National Bank, in which office he remained until the latter part of 1927, when he was again elected cashier and also retained the title of vice president. Between 1922 and 1929, while Hillman was acting either as vice president or cashier or both, there occurred a shortage in his accounts, in excess of the penalty of the fidelity bond, for which shortage Stockham would be liable, provided the fidelity bond was then in force and effect and covered Hillman in his position as vice president and cashier, or either or both of them, after 1922.

Hillman died the day before the First National Bank

was closed; the shortage was shortly thereafter discovered; a demand was made upon the sureties, but was unavailing, and, thereafter, Jack, as receiver, filed his claim with the assignee for the penalty of the fidelity bond, which claim was resisted by the assignee. The district court, upon trial, determined that the claim of Jack should be allowed for the full amount thereof, and rendered judgment accordingly. The assignee prosecutes this writ, relying upon the following assignments of error: (1) The judgment is contrary to the weight of the evidence; (2) contrary to law, and (3) the loss, if any, is due to the negligence of the bank examiners.

Plaintiff in error, Vanocker, however, in his brief, correctly and properly states his position in the following language: "In order to establish liability on the bond in this case it is necessary for the claimant to prove either one of two things: First, That the bond was a continuing bond and the liability of the sureties continued through the numerous annual stockholders' meetings, election of officers and regardless of what position Hillman occupied; or, second, that liability was either revived or acknowledged by the surety Stockham in the spring of 1929, by a statement made to National Bank Examiner W. N. Male assuring him that the bond was a good bond and supported by a property statement to demonstrate that fact, and that thereby a rule of estoppel is worked by which Dr. Stockham and the Assignee of his estate are now estopped to deny such liability."

We shall consider the second proposition first, and, as counsel properly admits, if this proposition should be determined adversely to his contention, it will be unnecessary to discuss the first proposition, or any other assignment.

The evidence discloses that Hillman's bond, under date of October 19, 1917, is the only bond which he gave to insure the faithful performance of his duties, and that the bond remained in possession of the bank from its

date until possession of the bank was taken by the receiver.

The deposition of W. N. Male, a national bank examiner, who had officially examined the First National Bank in the spring of 1929, was read, and, in answer to an interrogatory, witness stated that he had objected to Hillman's bond, with Stockham and his brother as sureties, and that Dr. Stockham had endeavored to convince witness that the bond was adequate protection to the bank, and also, that Dr. Stockham, upon the occasion of this examination, prepared and submitted to witness a financial statement to prove the adequacy of the sureties on Hillman's bond; and in the discussion between witness and Dr. Stockham, with Hillman and witness' assistant present, Dr. Stockham "was very emphatic in his statement that the bond protected the bank fully from loss on Mr. W. G. Hillman." Dr. Stockham was called as a witness and testified that he had no recollection of any objection to Hillman's bond and no recollection of any conversation respecting the same with Male. We have read the entire evidence of Dr. Stockham and are convinced that he was making an honest effort to tell the truth, but simply lacked the ability to correctly and accurately remember occurrences. In answer to questions, Dr. Stockham testified that he "was the directing head of the bank," and that Hillman's bond and the bond of other employees and officers were in his direct charge, but that, until after the bank was closed, and his attention called to the fact, he was unaware that Hillman was bonded.

 Counsel for Vanocker concede that if the fidelity bond in question is valid as to Dr. Stockham, it is a valid claim against his client. Male's evidence clearly establishes that in the spring of 1929, Stockham admitted that the condition and security of the Hillman fidelity bond was adequately sufficient to protect the bank against loss on account of Hillman; and this testimony in the record stands uncontradicted, unless we should hold that the equivocal answers of Dr. Stockham were a denial; how-

68

ever, even though Male's testimony was denied, it is the duty of the trial court to determine the facts from the evidence, and having done so, we will not disturb that determination.

Dr. Stockham was the "directing head of the bank"; in 1917, he then realized that Hillman, as cashier, should give a bond for the faithful discharge of his duties, and he became Hillman's surety; Dr. Stockham knew that, as president, it was his duty to see that the depositors and stockholders were afforded the protection of a fidelity bond against the dishonesty of faithless officers and employees. Hillman's bond, given in 1917, was kept in the bank files during the period from 1917 until the failure of the bank, and annually, if not oftener, it was exhibited to the bank examiner; and, by so doing, it was represented to be in full force and effect, and to adequately protect the bank against the dishonesty of the person therein bonded, and, in effect, in full compliance with law. If Hillman's duties were increased; if his responsibilities became greater; if his temptation to dishonesty became different in the position of vice president and cashier than as cashier, Stockham, as president, knew that fact, and made no objection to this increased risk, and did not request or require a new fidelity bond; so that, as we view the case, it is wholly immaterial whether the bond was given to protect the bank against Hillman's dishonesty while acting as cashier or while acting in any other capacity with the bank; or whether the fidelity bond was annual or a continuing bond; or whether its liability ceased when Hillman was elected vice president, and later became revived when he was re-elected cashier, because Stockham, in his conversation with Male, in the spring of 1929, acknowledged the validity of the bond, and stated that it was sufficient in amount and so conditioned as to afford the bank ample protection against any loss through Hillman.

This statement of Dr. Stockham, in view of his relation to the bank and his duty to the depositors and stockhold-

ers, and in consideration of the fact that he was charged with the duty of protecting the bank against loss, and seeing that it was conducted according to law, estops him, and thereby precludes his assignee, from successfully objecting to the allowance of this claim against the trust estate in his possession for distribution among Dr. Stockham's creditors. In the case of *Griffith v. Wright*, 6 Colo. 248, the elements of estoppel are fully set forth and discussed, and, while this case has been frequently cited with approval, the law therein announced has never been criticized or modified, and is now the settled law in this state. Every element of estoppel is found herein, and this makes it unnecessary for us to discuss other interesting assignments of error.

Judgment affirmed.

MR. JUSTICE BUTLER, sitting for MR. CHIEF JUSTICE ADAMS, and MR. JUSTICE CAMPBELL concur.